In re James T. METZ, a/k/a James T. Metz, Jr., Debtor.

Bankruptcy No. 893–81478–20.

United States Bankruptcy Court, E.D. New York, Westbury Division.

Oct. 18, 1994.

Brian P. Gallagher, Friedman, Krauss & Zlotolow, New York City, for Troy Sav. Bank.

James M. Nugent, Charmoy & Nugent, Bridgeport, CT, for debtor Huntington & Kildare, Inc.

Kathryn Lee Crawford, Loeb & Loeb, New York City, for Former Official Committee of Unsecured Creditors of Estate of James T. Metz, Jr.

Madelyn Spatt Shulman, Soberman, Shulman & Rosenberg, Lake Success, NY, for Rockville Tudor Apartment Corp.

Ned R. Nashban, Quarles & Brady, West Palm Beach, FL, for L & E Corp. and Thomas J. Donnely and Firstar Trust Co., Trustees of the Ralph Evenrude Revocable Trust of 1981.

Eric M. Reuben, Emmet, Marvin & Martin, New York City, for Bank of New York.

Jeffrey C. Daniels, Daniels & Daniels, Garden City, NY, for Maplewood Gardens Apartment Corp.

Robert K. Minkoff, Smith, Buss & Jacobs, New York City, for debtor James T. Metz, Jr.

Kenneth P. Silverman, Chapter 7 Trustee of the Estate of Metz, Jaspan, Ginsberg, Schlesinger, Silverman & Hoffman, Garden City, NY.

Scott Y. Stuart and Stan Y. Yang, Office of U.S. Trustee, Garden City, NY.

Margaret G. Johnston, Executrix of the Estate of Frank A. Galli and Former Chairperson of the Official Committee of Unsecured Creditors of Estate of James T. Metz, Jr., Pinna, Johnston, O'Donoghue & Burwell, P.A., Raleigh, NC.

Harvey Feldmeier, Asst. Atty. Gen., Real Estate Financing Bureau, New York State Dept. of Law, Office of Hon. G. Oliver Koppell, Atty. Gen. of State of N.Y., New York City.

## DECISION

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

Before the Court [1] is the motion ("Motion") of The Troy Savings Bank ("Troy") for a change of venue to this Court of the bankruptcy case of Huntington & Kildare, Inc. ("H & K"). H & K voluntarily commenced its bankruptcy case in May of 1994 by the filing of a petition in the United States Bankruptcy Court for the District of Connecticut (Bankr.Case No. 894–21930).

### LAW AND RELEVANT FACTS

The venue of a case under title 11, United States Code ("Bankruptcy Code") is governed by sections 1408 through 1412 of title 28, United States Code, and Federal Rule of Bankruptcy Procedure 1014 ("Bankruptcy Rules"). 28 U.S.C. §§ 1408–12 (1994); Fed. R.Bankr.P. 1014 (1994). Troy's Motion is made in the alternative, pursuant to either Bankruptcy Rule 1014(a)(1) or 1014(b); the pertinent parts of the Rule provide:

> *Cases Filed in Proper District.* If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

· · · · ·

**PROCEDURE WHEN PETITIONS INVOLVING THE SAME DEBTOR OR RELATED DEBTORS ARE FILED IN DIFFERENT COURTS.** If petitions commencing cases under the Code are filed in different districts by or against (1)

---

1. The Court has jurisdiction over this case pursuant to sections 1334, 157(a) and 157(b)(1) of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(A) of title 28.

the same debtor, or (2) a partnership and one or more of its general partners, or (3) two or more general partners, or (4) a debtor and an affiliate, on motion filed in the district in which the petition filed first is pending and after hearing on notice to the petitioners ... the court may determine in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.

Fed.R.Bankr.P. 1014(a)(1), (b) (1994).

We will decide whether the "convenience of the parties" dictates that the Motion should be granted. The courts customarily employ the following non-exhaustive list of factors in assessing the convenience of the parties:

The proximity of creditors of every kind to the court;

The proximity of the debtor to the court;

The proximity of witnesses necessary to the administration of the estate;

The location of the assets;

The existence of affiliates of the debtor and the existence of an intertwined relationship between the debtor and the affiliate(s);

The economical and efficient administration of the estate (usually the most important factor);

The relative ease of access to sources of proof;

The availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses;

The enforceability of a judgment if one is obtained;

The relative advantages and obstacles to fair trial;

Local interest in having localized controversies decided in a local forum; and

The likelihood of having trials in the state the law of which will govern the action.

See, e.g., Commonwealth of Puerto Rico v. Commonwealth Oil Refin. Co. (In re Commonwealth Oil Refin. Co.), 596 F.2d 1239, 1247 (5th Cir.1979), cert. denied, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980); In re Jolly, 106 B.R. 299, 300–01 (Bankr. M.D.Fla.1989); In re Waits, 70 B.R. 591, 594–95 (Bankr.S.D.N.Y.1987); In re Ofia Realty Corp., 74 B.R. 574, 576 (Bankr.S.D.N.Y. 1987); In re Almeida, 37 B.R. 186, 188 (Bankr.E.D.Pa.1984).

Troy stresses that application of the listed factors to the H & K case demonstrates that the case should be transferred to our District for the convenience of the parties. Many of the listed factors were enumerated in Troy's Motion papers. In addition to Troy's papers, H & K's bankruptcy petition also discloses facts which have application to the Motion and the enumerated factors. We will cover some of the applicable and pertinent aspects of the parties' papers, the files before the Court and the prior proceedings.

H & K is a corporation that is wholly owned by Metz's six children. Metz, his family, and certain of the parties involved in H & K's bankruptcy case have been involved in at least six other bankruptcy cases before this Court: In re Metz, (893–81478–20), which is Metz's personal bankruptcy case; In re Bechtold Corp. (893–85879–20), in which the debtor is a corporation fully owned by Metz's wife and which serves as managing agent for the real properties owned by H & K; In re Harding & Thornton, Inc. (893–85878–20), in which the debtor is a corporation of which Metz is the sole shareholder and president; In re Cobble Pond Farms, Inc. (891–85529–20), in which the debtor corporation's president is Metz, and its sole shareholders are Metz and his wife; In re Mitchelltown Apts., Inc. (891–87460–20), in which the debtor corporation's equity shares are owned 50% by H & K and 25% by Metz; and In re Kathleen M. Metz (893–86370–20), the personal bankruptcy case of Metz's wife.

Among the personal property listed as owned by H & K are approximately 260,000 shares of stock in eight cooperative apartment corporations. Six of these eight corporations' real property is located in our District. The shares of stock of these New York

corporations are virtually all encumbered by creditors' liens.

All but one of the sixteen creditors holding unsecured priority claims are New York municipal taxing authorities. H & K lists its involvement in eleven separate lawsuits: Three are in our District; not one was filed or is pending in Connecticut. One of the lawsuits in this District is H & K's own action against the present movant, Troy, filed in New York's Nassau County Supreme Court.

H & K owns one parcel of real property located in Connecticut, a residence; however, all other real property is located in New York. The residence is listed in H & K's voluntary bankruptcy petition as having a current market value of $1.5 million. (The bankruptcy petition is dated May 27, 1994). The balance of real property, located in New York, is listed as having an aggregate value of $4,677,600.

H & K is a New York corporation, not licensed to do business in Connecticut. H & K attempts to demean the significance of this fact, stating: "Had Troy checked the governing law it would had [sic] readily observed that the pertinent statutes contain numerous exceptions to the licensure requirement including, but not limited to, ownership of real estate. Therefore lack of a licensure in Connecticut is totally immaterial in this analysis." H & K's Objection ¶ 22. H & K omitted, however, to provide the Court with the "governing law." *Id.; see also* H & K's Memorandum of Law at 1 *passim* (no mention of Connecticut law allowing H & K to do business in the state). Query, then, whether an entity that is not licensed to do business in Connecticut may perform any of the acts necessary to achieve a business reorganization in bankruptcy. H & K seems not to be willing to provide the Court with the "pertinent statutes [that] contain numerous exceptions." *Id.* The Court is not at liberty to presume the existence of such Connecticut statutes or, if they exist, their applicability to the business of H & K.

The Court has heard many related issues involving H & K, Metz, his family and their businesses and affiliates. The Eastern District branch of the Office of the United States Trustee has many records and familiarity with these persons and entities. None of H & K's equity security holders intimated any difficulty with the location of this Court during our administration of matters in the six other related bankruptcy cases before this Court.

While H & K argues that the "vast majority of H & K's creditors are located in upstate New York or Connecticut," H & K's Objection ¶ 44, *not one* of these creditors has filed papers or attempted to raise objection in any way to Troy's Motion.

To quite the contrary, many persons and entities have filed papers in support of Troy's Motion. Such parties have detailed the legal and factual bases, and propriety of an order transferring the case to the Eastern District of New York. These parties are: Rockville Tudor Apartment Corporation, a cooperative apartment corporation which is listed as a creditor in the H & K bankruptcy schedules and which filed a proof of a claim against the *Metz* bankruptcy estate for over $800,000, representing unpaid real estate taxes and penalties; Maplewood Gardens Apartment Corp., a cooperative apartment corporation which was listed as a creditor of H & K in its bankruptcy schedules and which alleges a claim of $170,000 against the *Metz* estate; Margaret G. Johnston, Chairperson of the Official Committee of Unsecured Creditors in the prior chapter 11 *Metz* bankruptcy case (recently converted to one under chapter 7 of the Code), who, as executrix of the estate of Frank A. Galli, has filed an action alleging a fraudulent conveyance against H & K in the United States District Court for the Northern District of New York; the Assistant Attorney General in the Real Estate Financing Bureau of the New York State Department of Law, who, by affidavit, informs the Court that the Attorney General of the State of New York intends to commence a securities fraud action against H & K and others; The Bank of New York, which alleges a claim against H & K secured by a mortgage lien; Thomas J. Donnelly and Firstar Trust Co., Trustees of the Ralph Evenrude Revocable Trust of 1981, who allege through their attorney's affirmation that they are judgment creditors of the *Metz* estate and that the H &

K estate is the recipient of fraudulent transfers made by Metz and his children; and Kenneth P. Silverman, Esq., the chapter 7 trustee of the *Metz* estate.

It is difficult to regard H & K's argument that our District is not a convenient forum where not one person or entity (other than H & K and Metz) has asked that the case remain in the original forum. No secured or unsecured creditor, no taxing authority, no defendant or party presently involved in litigation with H & K, no present or potential witness, no present or potential lender, *nor even other equity holders of H & K* filed papers in opposition to the Motion, or intimated any desire to be heard.

In fact, Metz's objection to the Motion is itself perplexing. He provides observations regarding whether the H & K case should be transferred. But his own representations detail the lack of relevance of his input: Metz is not a shareholder of H & K (his minority interest was sold "more than three years ago"); Metz is not an officer of H & K; Metz is not a director of H & K; Metz exercises "no control, direct or indirect, over any outstanding voting stock of H & K;" Metz has "no authority, direct or indirect, to control or direct the business affairs and decisions of H & K;" Metz and H & K do not have an alterego relationship; and Metz and H & K are not affiliates. Affidavit of James T. Metz, dated July 25, 1994, ¶¶ 5–12. Metz's successful disassociation with H & K renders utterly immaterial his comments, suggestions and opposition to the Motion regarding the venue of the H & K bankruptcy case. The way Metz prefaces his comments—with a genuine detachment from H & K as a business and corporation—it is a mystery why he holds any interest in the location of the H & K bankruptcy case at all. Metz's standing to opine on the issue is questionable, at best.

To summarize: Metz affirms under penalty of perjury that he has no legal relationship with H & K or its "business affairs and decisions." *Id.* ¶ 12. Metz thus has irrelevant concern for where H & K's bankruptcy case lies. No other party joined H & K's request that the bankruptcy case remain in Connecticut. Six related cases are before this Court. Seven entities, including Movant, desire an order transferring the case to our District. H & K declined to demonstrate that it may legally even do business in Connecticut. Allegations abound that the *H & K* estate is the recipient of many fraudulent transfers and will be a defendant in actions by the chapter 7 trustee of the *Metz* estate and other New York entities or persons.

No director, officer, controlling person, shareholder, nor any person with an actual interest in H & K raised any opposition to an order transferring the case to our District. Thus, with Metz having successfully demonstrated a lack of interest or control over H & K, not one interested party opposes the Motion.

The Court need not further address the matter. According to the facts listed, the heavy support for the Motion, and the void of genuine opposition to the Motion, it would be an abuse of this Court's discretion to ignore the convenience of the parties. For these reasons, therefore, Troy's Motion for an order transferring the H & K case from the District of Connecticut to the Eastern District of New York is GRANTED in all respects. Troy has until November 4, 1994 to file and give notice of entry of an order by this Court in accordance with the decision herein.